IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 19, 2018

## PAUL BRENT BAXTER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 17-CR-36-PCR    Franklin L. Russell, Judge**

_____

### No. M2017-01230-CCA-R3-PC

_____

The petitioner, Paul Brent Baxter, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel at trial. Within the context of his post-conviction claims, the petitioner argues trial counsel was ineffective for failing to object to the State asking the victim to compare her pain level as a result of the petitioner's assault to the pain she experienced at other points in her life. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and TIMOTHY L. EASTER, J., joined.

Matthew D. Wilson, Mississippi State, Mississippi, for the appellant, Paul Brent Baxter.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Robert J. Carter, District Attorney General; and Weakly E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Factual and Procedural History*

### A. Trial

On direct appeal, this Court summarized the facts surrounding the petitioner's convictions and sentence, as follows:

On May 20, 2015, [the petitioner] was indicted with three counts of aggravated assault. At trial, Emma Christina Rowe testified that she had been in a romantic relationship with [the petitioner] for over two years. The couple lived together in Culleoka at the home of [the petitioner]'s mother. On the night of May 24, 2014, the couple had an argument. When [the petitioner] went to sleep, Ms. Rowe called her mother, who lived about twelve miles away in Cornersville. Ms. Rowe's mother drove to Culleoka and picked up Ms. Rowe.

On the following morning, around 8:00 a.m., [the petitioner] called Ms. Rowe and asked if he could pick her up. Ms. Rowe answered negatively and hung up. [The petitioner] called back immediately and again requested to pick up Ms. Rowe. She declined once more, and [the petitioner] then offered to provide her with prescription pills if she would agree to let him pick her up. Ms. Rowe testified that she had previously broken her back in a horrific automobile accident and was addicted to pain medication. However, Ms. Rowe again refused to allow [the petitioner] to pick her up. [The petitioner] then told Ms. Rowe that his mother "put a warrant on [Ms. Rowe] for a theft." Ms. Rowe inquired about the reason for the warrant, and [the petitioner] said that she had stolen jewelry from his mother. [The petitioner] admitted, however, that he and his mother knew that Ms. Rowe actually had not done so. [The petitioner] said that his mother would "drop" the warrant, if Ms. Rowe agreed to let [the petitioner] pick her up. Feeling frightened, Ms. Rowe agreed.

[The petitioner] and his mother arrived to pick up Ms. Rowe in a two-door car, which [the petitioner]'s mother was driving. When Ms. Rowe came to the car, [the petitioner] got out of the passenger side, moved the passenger seat forward, and let Ms. Rowe into the backseat. [The petitioner] then slid the passenger seat back and sat in the front seat. [The petitioner]'s mother began driving them back to her house. At this point, [the petitioner] and his mother were being "really nice" to Ms. Rowe.

After three or four minutes of travel, [the petitioner] "started yelling" at Ms. Rowe, saying, "Why did you leave me for? You'll never leave me again." While yelling, [the petitioner] turned around, hit Ms. Rowe in the face with his open palm "quite a few" times, and also pulled her hair. Then, [the petitioner] began squeezing her neck with his right hand "to the point where [she] couldn't breathe." Ms. Rowe felt like she was "going to pass out," so she hit [the petitioner]'s head with a glass Sundrop bottle, which she had brought with her. [The petitioner] released Ms. Rowe's neck

and then "punched" her right eye with his closed fist. [The petitioner] told his mother to stop the car, which she did. [The petitioner] opened the passenger side door, reached into the backseat, grabbed Ms. Rowe's hair, and pulled her out of the car through the space between the front seats. He then threw Ms. Rowe down onto the road and began "punching," "smacking," and "kicking" her "all over [the] face" while yelling about her leaving him. Ms. Rowe tried to shield herself with her hands.

Eventually, [the petitioner] quit hitting Ms. Rowe. He pulled her up by her hair then grabbed her neck and shoved her into the passenger seat. Ms. Rowe quickly crawled into the backseat, attempting to put distance between herself and [the petitioner]. [The petitioner]'s mother began driving the car toward Culleoka, and [the petitioner] continued to hit Ms. Rowe "a few more" times. Once they began driving on the interstate, [the petitioner] stopped hitting Ms. Rowe.

When they returned to the home of [the petitioner]'s mother, [the petitioner] left the car, went inside the house, and went to sleep on the couch. Ms. Rowe limped out of the car and sat on the porch with [the petitioner]'s mother. Ms. Rowe was in "extreme physical pain." Her face hurt and her right leg was "hurting really bad[ly]." She told [the petitioner]'s mother that she thought her leg was broken. [The petitioner]'s mother allowed Ms. Rowe to use the phone, and Ms. Rowe called her mother and told her to pick her up at a store located about half a mile away. [The petitioner]'s mother accompanied Ms. Rowe to the store, and Ms. Rowe waited for her mother. When Ms. Rowe's mother arrived, she drove Ms. Rowe to the emergency room at Marshall Medical Center in Lewisburg.

Upon admission to the hospital, Ms. Rowe reported experiencing maximum pain on a scale of one to ten, which is considered extreme physical pain. An x-ray of Ms. Rowe's leg revealed a fracture near her ankle. A CAT scan of her head and face revealed multiple fractures around her left eye. All of these fractures were consistent with [the petitioner]'s behavior as described by Ms. Rowe. Medical personnel placed a splint on Ms. Rowe's leg, gave her crutches, and instructed her to visit an orthopedic doctor for additional treatment. Ms. Rowe followed this advice, and her leg was placed in a cast. She did not have full use of her right leg for approximately three months. In addition to the splint, Ms. Rowe was given pain medication and antibiotics.

*State v. Paul Brent Baxter*, No. M2016-00049-CCA-R3-CD, 2016 WL 5831616, at *1-2 (Tenn. Crim. App. Sept. 30, 2016), *no perm. app. filed.*

## B. Post-Conviction Hearing

While the post-conviction hearing covered several issues, the facts most relevant to this appeal concern trial counsel's decision not to object to the State's questioning of the victim about her pain level. More specifically, the petitioner questioned trial counsel if he recalled the State questioning the victim about prior incidents in which she experienced pain and comparing those incidents to the pain she experienced as a result of the petitioner's assault. After acknowledging he remembered the State's line of questioning, trial counsel explained,

> I felt like the prosecutor had a right to inquire within the level of pain, so the jury would understand how much pain that [the victim] was in. The doctor testified as to, I believe she testified to pain was severe, ten out of ten, maybe. And I felt like the prosecutor had a right to ask [the victim] about the degrees of pain, so the jury would understand.

Trial counsel went on to state that whether he liked the line of questioning or not was not the issue. He did not object because he believed the State had a right to establish a baseline for the victim's pain and the testimony was, therefore, admissible.

In contrast, the petitioner testified he believed trial counsel should have objected to the State's questioning. According to the petitioner, the State's questioning was an attempt to make the jury feel sorry for the victim by "playing on the jury['s]" sympathies and unduly prejudiced him.

In denying relief on this claim, the post-conviction court concluded:

> Evidence of past painful experiences in the life of Ms. Rowe, the victim, for example, injury in an automobile accident, was highly relevant to the jury in evaluating the seriousness of the victim's injuries. The testimony provided a baseline for the victim's pain threshold and provided comparisons in Ms. Rowe's life that allowed the jury to determine just how "extreme" the pain was that resulted from the [petitioner]'s beating of the victim.

> The State might have attempted, unsuccessfully, to slip in evidence of the injuries to Ms. Rowe suffered as a result of the [petitioner]'s prior and subsequent beatings of Ms. Rowe. Such evidence would have inflamed

- 4 -

the jury and had an "unfair prejudicial effect" on the jury. However, the testimony concerning tough life experiences, not caused by the [petitioner], could not possibly have inflamed the jury. At most evidence of such accidental injuries might make the victim a very slightly more sympathetic figure, but not to the point of outweighing the probative value of having something to which the victim could compare the pain from the [petitioner]'s beating of Ms. Rowe.

Following the post-conviction court's decision, the petitioner filed this timely appeal.

### *Analysis*

On appeal, the petitioner contends the post-conviction court erred in denying his claim of ineffectiveness of trial counsel. He argues he was unduly prejudiced by trial counsel's failure to object to the State's questioning of the victim about prior injuries and levels of pain. Upon our review of the applicable law, the record on appeal, and the arguments of the parties, we affirm the judgment of the post-conviction court.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *see Dellinger*, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id.* Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457.

During the petitioner's trial, the State, in an attempt to establish the elements of aggravated assault, questioned the victim about her level of pain resulting from her injuries suffered during the petitioner's attack. More specifically, the State asked the victim to compare her pain after the attack to pain she had experienced during other times of her life. It was during this portion of the trial that the following exchange took place between the State and the victim:

> Q:  So that the ladies and gentlemen of the jury understand your pain level at the time you got to that hospital, I want to go with your experiences, because you were the one who was experiencing the pain that day.
>
> A:  Yes, sir.
>
> Q:  Out of those four events, two broken legs and injuries, broken back and a car wreck.
>
> A:  Uh-huh.
>
> Q:  Childbirth, heart attack, and the pain you had on May 25th. Of those four, which was the worse pain you had ever had?
>
> A:  The car wreck was the worst pain.
>
> Q:  The car wreck was number one?
>
> A:  Uh-huh.

- 6 -

Q: How did this pain that you had on May 25th, compare to childbirth?

A: It was worse than the childbirth.

Q: And how did this pain that you had on May 25th, compare to the heart attack?

A: It was worse, worse than the heart attack.

Q: So your pain was worse with the car wreck. Next came this beating on May 25th. And then the childbirth and the heart attack were less?

A: Right.

Q: So, when you say 10 in extreme physical pain, that's what you mean?

A: That's what I mean, yes, sir.

. . .

Q: And what did you tell them your pain level was when you went to that hospital?

A: It was a 10.

The petitioner contends this line of questioning "invariably evoked some measure of sympathy from the jury. That in turn would have bolstered [the victim's] testimony regarding the abuse she allegedly received from the [petitioner]." We disagree.

Trial counsel testified he did not object because he believed the State had a right to inquire about the victim's pain level and place it in context so the jury could understand. Thus, trial counsel made a strategic decision not to object. "[I]n reviewing counsel's conduct, a 'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Strickland*, 466 U.S. at 689, and *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982) (stating that "counsel's conduct will not be measured by '20-20 hindsight'")). Additionally, as found by the

post-conviction court, this testimony was "highly relevant to the jury in evaluating the seriousness of the victim's injuries" and "provided a baseline for the victim's pain threshold and . . . allowed the jury to determine just how 'extreme'" the victim's pain was as a result of the petitioner's attack. The petitioner has, therefore, failed to show counsel was deficient.

Finally, even if this Court were to find counsel deficient for failing to object to the questions about the victim's prior injuries, the petitioner has failed to establish how he was prejudiced by trial counsel's actions. As found by the post-conviction court, the proof at trial establishing the victim's pain level and the seriousness of her injuries was overwhelming. Per the victim's medical records, she suffered numerous fractures to both her ankle and around her eye. She reported to medical personnel that she was experiencing maximum pain. Based on the victim's testimony as well as the medical proof, the evidence the victim suffered serious bodily injury and extreme pain as a result of the petitioner's attack was overwhelming, and the testimony concerning prior injuries had little, if any, effect on the jury and the verdict. To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The petitioner, therefore, has failed to establish the prejudice prong of *Strickland* and is not entitled to post-conviction relief.

### *Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
J. ROSS DYER, JUDGE